ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E. Warm Springs Rd Suite 130
Las Vegas, NV 89119
Telephone:  (702) 614-0600
Facsimile:  (702) 614-0647
*Attorney for Brian D. Shapiro, Trustee*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>GENERATION NEXT FRANCHISE BRANDS, INC.,<br><br>Debtor. | Case No. 19-17921-mkn<br>Chapter 7<br><br>Hearing Date:  OST Requested<br>Hearing Time:  OST Requested |

|  | |
|---|---|
| ☒ Affects All Debtors<br>☐ Affects GENERATION NEXT FRANCHISE BRANDS, INC.<br>☐ Affects REIS & IRVY'S INC.<br>☐ Affects PRINT MATES, INC.<br>☐ Affects 19 DEGREES, INC. | *Jointly Administered*:<br>19-17921-mkn  GENERATION NEXT FRANCHISE BRANDS, INC. (Lead)<br>19-17922-mkn  REIS & IRVY'S INC.<br>19-17923-mkn  PRINT MATES, INC.<br>19-17924-mkn  19 DEGREES, INC. |

## MOTION FOR AN ORDER: (I) APPROVING SALE OF CERTAIN ESTATE ASSETS FREE AND CLEAR OF LIENS; AND (II) APPROVING STIPULATIONS REGARDING LIEN RELEASES

BRIAN D. SHAPIRO, the chapter 7 trustee of the above-captioned bankruptcy

estates ("***Trustee***"), hereby moves the Court for entry of an order approving an offer for the

sale of certain property of the bankruptcy estate and approving associated stipulations

regarding lien releases.

This Motion is based on: the Memorandum of Points and Authorities contained

herein; the pleadings and papers on file in this case; the attached exhibits; the *Declaration of*

*Brian D. Shapiro* ("***Trustee's Decl.***") filed contemporaneously herewith; filed

-1-

contemporaneously herewith; and any oral arguments made of the time of hearing on this matter.

DATED:  March 6, 2020                          **ATKINSON LAW ASSOCIATES LTD.**

By: _____/s/ Robert Atkinson_____
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Trustee Brian D. Shapiro*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    BACKGROUND

1.      Pre-petition, the Debtors were collectively involved in the industry of unattended retail solutions and vending kiosks, and the franchising thereof.  [DE #27 at ¶ 9.]

2.      On December 15, 2019 ("***Petition Date***"), the debtors filed for chapter 11 bankruptcy relief in this district, commencing these four bankruptcy cases (collectively, the "***Bankruptcy Cases***"):

- 19-17921-mkn GENERATION NEXT FRANCHISE BRANDS, INC.
- 19-17922-mkn REIS & IRVY'S INC.
- 19-17923-mkn PRINT MATES, INC.
- 19-17924-mkn 19 DEGREES, INC.

[DE #1].

3.      On December 17, 2019, an order was entered [DE #47] for joint administration of the Bankruptcy Cases.

4.      On January 24, 2020, an order was entered [DE #164] converting these cases to one under Chapter 7.

5.      Also on January 24, 2020, Brian D. Shapiro was appointed as chapter 7 trustee of all four above-captioned bankruptcy estates (collectively, the "***Bankruptcy Estates***").  [DE #166.]

6.      The schedules of the four debtor entities collectively identify several asset classes, mostly consisting of bank accounts, patents, inventory, office furnishings and fixtures.

[DE #126, 128, 132, and 133.]   Most of the assets are the property of debtor Reis & Irvy's Inc.  [Id.]

7.      The schedules also identify several lienholders: Genext Loan, LLC; Brett Hall; CK Green Partners, LLC; and Kenneth Cascarella. [Id.]  During the pendency of the chapter 11 case, Genext Loan, LLC also became a super-priority lienholder as a result of providing post-petition financing to the Debtors.  [DE #62.]

8.      The pleadings filed by Debtors at the start of the Bankruptcy Cases also identified another lienholder, Presto Yogurt Vending LLC ("***Presto***"), which owns two kiosks and for which it is the holder of a pre-petition perfected lien against those two machines. [DE #27 at ¶ 30.]

9.      The Trustee investigated the assets of the Debtor entities, and discovered that a classic "melting ice cube" situation exists: the assets of the Debtor are valuable, but the value of those assets will be significantly diminished over time and in the near future.  Lienholder Genext Loan, LLC (hereinafter, "***Buyer***") approached the Trustee with an offer to purchase most of the assets of the estates, in exchange for a mixture of a credit bid of the amount owed to Buyer, plus cash.  After assessing the situation, the Trustee entered into negotiations with Buyer.  [Trustee's Decl. at ¶ 5.]

10.      During his investigations, the Trustee also became aware of three other entities that asserted lien interests in some of the assets of the Debtors: Flex, Ltd., Pitney Bowes Inc., and Socially Responsible Brands, Inc.  [Id. at ¶ 6.]

11.      Complex multi-party negotiations ensued, and ultimately an Asset Purchase Agreement ("***APA***") was signed with the Buyer and the four Bankruptcy Estates.  The APA, which is attached hereto as **EXHIBIT 1** and which is discussed further below, is contingent upon bankruptcy court approval.  The APA seeks a sale of most of the assets of the estates (the "***Sale***"), free and clear of all liens, claims, and encumbrances.  Towards that end:

- Lienholders Brett Hall, CK Green Partners, LLC, and Kenneth Cascarella (collectively, the "***Participating Lienholders***") are tendering lien releases conditional upon approval of the Sale in exchange for either equity participation in Buyer, or a cash payment by Buyer;

-3-

- The lien of Buyer is being deemed satisfied as a result of the credit bid portion of the purchase price;

- The secured assets of Presto are not being sold (thus preserving its lien on those assets); and

- Flex, Ltd., Pitney Bowes Inc., and Socially Responsible Brands, Inc. (collectively hereinafter, the "***Cash-Out Parties***") are each providing their consent to the Sale, in exchange for cash payments to be distributed to those parties by the Trustee immediately after closing of the Sale.

[Trustee's Decl. at ¶ 8.]

12.    Each of the Cash-Out Parties have signed a stipulation, which are being docketed concurrently with this Motion (the "***Stipulations***").  Each Stipulation provides for consent to the Sale pursuant to 11 U.S.C. § 363(f)(2), and provides for a cash distribution to each such party immediately after closing of the Sale (details provided below).

## II.    LEGAL AUTHORITIES & ARGUMENT

### A.  *Private Sale in Sound Judgment and Good Faith*

13.    Section 363 of the Bankruptcy Code provides that a bankruptcy trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. §363(b).  A proposed sale may be approved by the Court if the sale is a sound exercise of the Trustee's business judgment and is proposed in good faith and for fair value.  In re Air Beds, Inc., 92 B.R. 419 (9th Cir. B.A.P. 1998).

14.    In general, the terms of the sale are:

- The assets being sold to the Buyer ("***Assets***") are all assets of the Debtors, excluding the Excluded Assets (as defined below).

    For avoidance of doubt, the Assets include: (i) all properties, assets, goodwill, rights and claims of the Debtors, of whatever kind and nature, real or personal, tangible or intangible (other than Excluded Assets) including without limitation, contract rights, any permits, consents, licenses and approvals from any third party, (ii) all intellectual property, assets, rights and claims of the Debtors, including, without limitation, trademarks, service marks, patents, copyrights, trade secret and confidential information ; (iii) all causes of action, claims, litigation, counterclaims, defenses or

rights related to the Debtors' business or the Assets ("***Causes of Action***") of Seller, except for the Retained Litigation Claims (defined below); (iv) all contents of any bank account held in the name of Reis & Irvy's and Print Mates into which franchisee credit card sales are deposited (the "***Franchisee Revenues Bank Accounts***"); and (v) all books and records related to the above. Buyer shall be responsible for determining which funds in the Franchisee Revenues Bank Accounts belong to which franchisee, if any, and distributing the same.

- The assets not being sold to the Buyer ("***Excluded Assets***") are:

  - The leasehold interest of any of the debtor entities in the commercial lease for 2620 Financial Court, Suite 100, San Diego CA 92117.

  - The unearned insurance premiums for the following insurance policies: (i) an employment practices insurance policy from Lloyd's of London, and (ii) a cyber liability insurance policy from Crum & Forster Indemnity Co.

  - The proceeds of any insurance policy including but not limited to any director and officer's liability insurance policy.

  - The contents of any bank accounts held in any of the Debtor's names, including all Debtor-In-Possession bank account(s) established by any of the Debtors, but excluding any Franchisee Revenue Bank Accounts.

  - The Presto kiosk(s).

  - An irrevocable license to the Books and Records as set forth above.

  - The following litigation claims ("***Retained Litigation Claims***"): any and all claims and Causes of Action held by Seller against any person or entity, either individually or in their capacity as a director and/or officer of any of the debtor entities, whether under state law, Federal law, or otherwise  as follows: (i) all claims arising under any chapter of the United States Bankruptcy Code, (ii) all claims arising under the fraudulent transfer statutes of any State, and (iii) all D&O claims that may exist against the directors and officers of the debtors, whether brought as direct claims or derivatively, other than Causes of Action against Ryan Polk, Lavaille Lavette, Chris Maudlin, and Thomas McChesney which are being purchased as part of the Assets.

- Buyer shall pay **$1,909,000.00** to purchase the Assets, comprised of a $909,000 cash payment, and a $1,000,000 credit bid.

- Within two days after the closing of the Sale, the Trustee shall distribute the following amounts to the Cash-Out Parties, in satisfaction of the Stipulations:

  - $409,000 to Flex, Ltd. (comprised of $400,000 plus $9,000 towards removal of the warehoused items);

  - $100,000 to Pitney Bowes Inc.; and

  - $85,000 to Socially Responsible Brands, Inc.

- After distribution of the funds to the Cash-Out Parties, the remaining $315,000.00 shall be unencumbered property of the Seller, available to pay creditors and administrative claims of the Bankruptcy Estates.[1]

The specific terms of the proposed Sale is contained in the APA, which contains many terms and conditions.  See **EXHIBIT 2**.

15.    Based on the Trustee's investigations into the Assets and the financial affairs of the Debtors, it is the Trustee's business judgment that the Buyer's offer represents a fair and reasonable offer for the Assets.  [Trustee's Decl. at ¶ 8.]

16.    Furthermore, the Trustee believes that the Buyer, as a senior lienholder for the Assets, is the natural buyer for the Assets, and the Assets are more valuable to Buyer than to an interested third party.  Additionally, Buyer's knowledge of the Assets permits the sale to be "as is", without any need for a due diligence period.  Therefore, the Trustee, in his business judgment, believes that general marketing efforts would be not yield meaningfully competitive offers.  There is no ready market for the Assets, and the costs of active solicitation would likely significantly diminish the purchase price because of the "melting ice cube" aspect of the Assets.  Accordingly, the Trustee believes that the APA is the highest and best offer for the Bankruptcy Estates.  [Trustee's Decl. at ¶ 9.]

17.    However, to account for the possibility that there are other interested parties, overbids may be presented at the hearing on this Motion, although no auction is expressly

---

[1]  The Trustee shall reserve this portion of the purchase price in a segregated account until he can later determine how to allocate it across the Bankruptcy Estates.

contemplated and the Trustee will not be actively soliciting further offers.  Any initial overbid must be at least higher than the total Purchase Price.  Prior to presenting any bid, a prospective over-bidder must agree, in writing, to the same terms as described in the APA (other than price) and agrees to execute a substantially similar agreement if they are the high bidder.  All prospective over-bidders must provide proof of funds to the Trustee no later than 24 hours prior to the hearing on this motion (with the proven funds serving as the over-bidder's maximum overbid).  Overbids must be for the entire set of Assets, not individual lots.

18.    The APA has been negotiated by the parties in good faith.  [Trustee's Decl. at ¶ 10.]

19.    The Trustee, in his business judgment, believes that: (i) the terms of the Sale, as set forth in the APA, constitute a fair and reasonable deal for the Bankruptcy Estates; and (ii) consummation of the Sale of the Assets on the terms of the APA is in the best interest of the Bankruptcy Estates, their creditors, and other parties-in-interest.  [Id. at ¶ 11.]

20.    For the reasons stated above, the proposed sale of the Assets should be approved as a sale being made in the Trustee's sound judgment and in good faith. Accordingly, the Trustee also requests that the Court deem the sale to be made in good faith, and be afforded the protections found in 11 U.S.C. § 363(m).

21.    Furthermore, the Trustee has investigated the Buyer and the Debtors, and in light of the significant consideration paid as part of the Sale, has concluded that:

-    The consideration provided by the Buyer pursuant to the APA, including the credit bid portion of the purchase price, is fair and adequate, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, including for purposes of the Uniform Fraudulent Transfer Act and the Uniform Fraudulent Conveyance Act.

-    Buyer is not a mere continuation of or successor to the Debtors in any respect, and there is no continuity of enterprise between the Debtors and the Buyer. Accordingly, Buyer should take title to the Assets without any successor liability.

[Trustee's Decl. at ¶ 12.]

**B.  Sale Free and Clear of Liens, Claims, and Encumbrances**

22.    Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property "free and clear of any interest in such property of an entity other than the estate" if one of the five conditions is satisfied.  The second condition is: "(2) such entity consents".  11 U.S.C. § 363(f).

23.    In the proposed Sale, all lienholders (each of which are being sent notice of this Motion) consent.[2]  Specifically: (i) the three Participating Lienholders are tendering conditional releases; (ii) the three Cash-out Buyers have signed the Stipulations, each of which contains a term that provides for consent to the Sale pursuant to 11 U.S.C. § 363(f)(2); and (iii) Genext Loan, LLC, as Buyer, is obviously consenting to the Sale.  Accordingly, the sale can be made free and clear of liens, claims, and encumbrances.

**C.  Relief under Bankruptcy Rule 6004(h) is Appropriate**

24.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that any order authorizing it to sell the Property be effective immediately by waiving the 14-day stay of Bankruptcy Rule 6004(h).

25.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Bankruptcy Rule 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay, *Collier on Bankruptcy* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 *Collier on Bankruptcy*, § 6004.10 (15th rev.). Collier further suggests that if an objection is overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.  [Id.]

---

[2] Excluding Presto, but the Presto assets are Excluded Assets and thus not part of the Sale.

### III.    RELIEF REQUESTED

26.    By this Motion, the Trustee seeks the entry of an order: (i) approving the Sale of the Assets free and clear of liens, claims, and encumbrances, on the terms and conditions of the APA attached hereto; (ii) approval of the Lien Releases; (iii) waiver of the 14-day stay; and (iv) related relief.  The specific proposed form of order for which approval is sought (inclusive of findings of fact) is attached as Exhibit A to the APA.

# # # # #

DATED:  March 6, 2020                    **ATKINSON LAW ASSOCIATES LTD.**

By:      /s/ Robert Atkinson
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Trustee Brian D. Shapiro*

# EXHIBIT 1 to MOTION TO SELL:

# ASSET PURCHASE AGREEMENT

# ASSET PURCHASE AGREEMENT

This asset purchase agreement ("*Agreement*"), is made by and between: (i) the BANKRUPTCY ESTATE OF GENERATION NEXT FRANCHISE BRANDS, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17921-mkn, the BANKRUPTCY ESTATE OF REIS & IRVY'S INC., arising from Nevada chapter 7 bankruptcy case no. 19-17922-mkn, the BANKRUPTCY ESTATE OF PRINT MATES, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17923-mkn, and the BANKRUPTCY ESTATE OF 19 DEGREES, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17924-mkn, all by and through chapter 7 trustee Brian D. Shapiro (collectively, the "*Bankruptcy Estates*" or "*Seller*"), on the one hand; and (ii) Genext Loan, LLC ("*Buyer*") on the second hand. Buyer and Seller are each referred to herein as a "*Party*", or collectively as the "*Parties*".

## RECITALS

WHEREAS, on December 15, 2019 ("*Petition Date*"), four companies (collectively, "*Debtors*") filed for chapter 11 bankruptcy relief in the District of Nevada, as bankruptcy cases nos. 19-17921-mkn, 19-17922-mkn, 19-17923-mkn, and 19-17924-mkn (collectively, the "*Bankruptcy Cases*"); and

WHEREAS, Seller is collectively the four bankruptcy estates formed by the filing of the Bankruptcy Cases; and

WHEREAS, the Bankruptcy Cases were converted to chapter 7 on January 24, 2020; and

WHEREAS, Brian D. Shapiro ("*Trustee*") is the appointed chapter 7 trustee of the Bankruptcy Estates; and

WHEREAS, the Buyer contends it is the senior secured lender as to all of the Assets (as defined herein) of the Seller pursuant to that certain final Order dated December 26, 2019 (the "DIP Order"). [DE 62] Pursuant to the DIP Order the conversion of the Bankruptcy Cases is an event of default and as such, pursuant to the DIP Order, the Buyer, as senior secured lender, has the immediate right to foreclose on the Assets.

WHEREAS the Trustee (on behalf of the Bankruptcy Estates) desires to sell, and Buyer desires to purchase, the Assets (as that term is defined below) of the Bankruptcy Estates, on the terms and conditions herein, as described below (the "*Sale*"); and

WHEREAS, Buyer has advised that certain alleged lien holders, namely Brett Hall, CK Green Partners, LLC, and Kenneth Cascarella (collectively, the "*Participating Lienholders*") have each agreed to tender conditional lien releases as part of the sale contemplated herein in exchange for equity participation in the Buyer and/or cash payments, and for which Buyer shall be responsible for procuring such lien releases prior to the hearing on the Sale Motion and providing the same to the Trustee, and the Trustee has agreed to, and shall, hold these lien releases in trust pending the Closing (as that term is defined below) of the Sale, and furthermore Presto Yogurt Vending LLC will retain its collateral; and

WHEREAS, certain other alleged lien holders, namely Flex, Ltd., Pitney Bowes Inc., and Socially Responsible Brands, Inc. (collectively, the "*Cash-Out Parties*") have each agreed to tender conditional lien releases ("Lien Releases") to the Trustee as part of the Sale contemplated herein, in exchange for

the cash payments set forth herein, and the Trustee has agreed to, and shall, hold these Lien Releases in trust pending the Closing of the Sale; and

WHEREAS, prior to the filing of the Bankruptcy Cases and during the Bankruptcy Cases by virtue of the final DIP Order, the Buyer is now owed in excess of $1,000,000 in principal and interest plus attorney fees and costs. Buyer and Seller agree that Buyer has at least a million-dollar first priority secured lien on all assets of the Debtors, shall credit bid $1,000,000 as part of this Agreement. If Buyer is the prevailing purchaser, Buyer shall release any and all claims against the Bankruptcy Estate.

NOW, THEREFORE, the Parties, intending to be legally bound, do hereby agree as follows:

## ARTICLE I.  SALE AND PURCHASE

Section 1.01    Bankruptcy Court Approval Required.  The Parties acknowledge that this Agreement, inclusive of the sale contemplated herein, is contingent upon Bankruptcy Court approval. The Trustee shall prepare and file a motion to obtain such approval (the "*Sale Motion*"). All Parties hereto agree not to directly or indirectly oppose the Sale Motion.  Although the sale is contemplated as a private sale, Buyer acknowledges that the Court may *sua sponte* call for overbids at the hearing on the Sale Motion.  Unless otherwise extended by the Parties, if the Bankruptcy Court does not approve this Agreement and enter an Order substantially in the form attached as Exhibit A hereto (and incorporated herein by reference) by March 20, 2020, then this Agreement, and all of the obligations contained herein shall be null and void; *however*, the Parties may agree to modify the terms of this Agreement based on the arguments made in any opposition that may be filed to the Sale Motion, and, if so, then such modifications shall be included in any order approving this Agreement and be incorporated within this Agreement as if set forth fully herein.  To the extent the Court *sua sponte* calls for overbids, the Seller agrees that in order to be a "higher and better bid" any such bid must provide for repayment of the full of the Prepetition Obligations (as defined in the DIP Order) and the Postpetition Obligations (as defined in the DIP Order) indefeasibly, in cash, at Closing. Other than specifically set forth herein, nothing herein is intended to or shall be deemed to amend the final DIP Order.

Section 1.02    Sale Free and Clear of Liens.  The sale contemplated herein (the "*Sale*") is a private sale between the Seller and the Buyer made pursuant to Section 363(b) and (f) of the United States Bankruptcy Code free and clear of liens or claims.

Section 1.03    Property to be Sold.  Subject to the terms and conditions herein set forth, Seller shall sell, convey, transfer, assign and deliver all of its rights, title, and interest in and to the following assets to Buyer ("*Assets*"):

- All assets of the bankruptcy estate of Generation Next Franchise Brands, Inc., Nevada case no. 19-17921-mkn, excluding all Excluded Assets (as that term is defined below).

- All assets of the bankruptcy estate of Reis & Irvy's, Inc., Nevada case no. 19-17921-mkn, excluding all Excluded Assets (as that term is defined below).

- All assets of the bankruptcy estate of Print Mates, Inc., Nevada case no. 19-17923-mkn, excluding all Excluded Assets (as that term is defined below).

- All assets of the bankruptcy estate of 19 Degrees, Inc., Nevada case no. 19-17924-mkn, excluding all Excluded Assets (as that term is defined below).

- For avoidance of doubt, the Assets includes: (i) all properties, assets, goodwill, rights and claims of the Debtors, of whatever kind and nature, real or personal, tangible or intangible (other than Excluded Assets) including without limitation, contract rights, any permits, consents, licenses and approvals from any third party, (ii) all intellectual property, assets, rights and claims of the Debtors, including, without limitation, trademarks, service marks, patents, copyrights, trade secret and confidential information ; (iii) all causes of action, claims, litigation, counterclaims, defenses or rights related to the Debtors' business or the Purchased Assets ("Causes of Action") of Seller, except for the Retained Litigation Claims (defined below); (iv) all contents of any bank account held in the name of Reis & Irvy's and Print Mates into which franchisee credit card sales are deposited (the "***Franchisee Revenues Bank Accounts***"); and (v) all books and records related to the above ("Books and Records"), including, without limitation, all computers and hard drives on which such books and records may exist and any manuals for the operation of the machines; *however*, Seller shall be entitled to a copy of any or all of such records, to the extent that it so desires. Both Buyer and Seller shall cooperate with each other so that each other party may have reasonable access to the Books and Records. Buyer shall immediately create an electronic link to the electronic files constituting a portion of the Books and Records to which the Trustee shall have access. Unless the Bankruptcy Estate has been closed more than two years, Buyer shall not destroy any Books and Records without the consent of the Trustee and/or approval by the Bankruptcy Court.

The term "***Excluded Assets***" is defined as follows:

- The leasehold interest of any of the debtor entities in the commercial lease for 2620 Financial Court, Suite 100, San Diego CA 92117.

- The unearned insurance premiums for the following insurance policies: (i) an employment practices insurance policy from Lloyd's of London, and (ii) a cyber liability insurance policy from Crum & Forster Indemnity Co.

- The proceeds of any insurance policy including but not limited to any director and officer's liability insurance policy.

- The contents of any bank accounts held in any of the Debtor's names, including all Debtor-In-Possession bank account(s) established by any of the Debtors, but excluding any Franchisee Revenue Bank Accounts.

- The kiosk in the possession of Presto Yogurt Vending LLC.

- An irrevocable license to the Books and Records as set forth above.

- All Retained Litigation Claims, as that term is defined below

For all purposes of this Agreement, the term "***Retained Litigation Claims***" means: any and all claims and Causes of Action held by Seller against any person or entity, either individually or in their capacity as a director and/or officer of any of the debtor entities, whether under state law, Federal law, or otherwise as follows: (i) all claims arising under any chapter of the United States Bankruptcy Code, (ii) all claims arising under the fraudulent transfer statutes of any State, and (iii) all D&O claims that may exist against the directors and officers of the debtors, whether brought as direct claims or derivatively other than Causes of Action against Ryan Polk, Lavaille Lavette, Chris Maudlin, and Thomas McChesney which are being purchased as part of the Purchased Assets. For avoidance of doubt, all Retained Litigation Claims shall be retained by Seller and are not sold pursuant to this Agreement.

For avoidance of doubt, the sale contemplated herein is an asset sale. Buyer is not assuming any liabilities of any of the Debtor entities and has the rights and obligations with respect to certain potentially disputed claims as set forth in Section 1.09 below.

Section 1.04    Purchase Price. Buyer agrees to pay $1,909,000.00 to purchase the Assets ("***Purchase Price***"), comprised of a $909,000 cash payment to the Seller ("***Cash Portion of Purchase Price***"), and a $1,000,000 credit bid ("***Credit Bid Portion of Purchase Price***").

Section 1.05    Closing; Remittance; Distribution; Segregation Until Allocation. Within two business days after execution of this Agreement, Seller shall remit the Cash Portion of the Purchase Price to the Trustee. Such remittance shall be made by wire transfer, delivered to the Trustee. The Trustee shall hold such funds in a segregated account in the lead bankruptcy case (case 19-17921-mkn). Closing of the sale (the "***Closing***") shall occur upon the following, each of which is a condition precedent to the Sale; (i) delivery and clearance of the Cash Portion of the Purchase Price in good funds to the Buyer; (ii) entry of the Bankruptcy Court Order in the form of Exhibit A approving the Sale and/or otherwise approved by the Parties; and (iii) the Bankruptcy Court Order is not subject to any stay or injunction.

Notwithstanding anything to the foregoing, no party herein shall be required to close if any representation made by the other Party is untrue or if the lien releases described herein have not been obtained. Following the Closing, any and all lien rights of the Buyer and the Participating Lienholders in the Assets shall be extinguished. Any and all lien rights of the Cash-Out Parties in the Assets shall attach to the Cash Portion of Purchase Price.

Within two business days after the entry of the Bankruptcy Court Order, the Trustee shall distribute the following amounts to the Cash-Out Parties (by virtue of wire transfer or check), in satisfaction of the lien releases tendered by these Parties:

- $409,000 to Flex, Ltd. (comprised of $400,000 plus $9,000 towards removal of the warehoused items)
- $100,000 to Pitney Bowes Inc.

- $85,000 to Socially Responsible Brands, Inc.

The Trustee shall subsequently transmit to Buyer proof of the above payments made to the Cash-Out Parties.

After distribution of the funds to the Cash-Out Parties, the remaining $315,000.00 shall be unencumbered property of the Seller, available to pay creditors and administrative claims of the Bankruptcy Estates. The Trustee shall maintain those funds in the segregated account, and not distribute them (including distributing them across any of the Bankruptcy Estates) without further court order.

The transfer, sale, conveyance and assignment of the Purchased Assets shall be effectuated by the execution and delivery at the Closing by the Seller of one or more bills of sale, substantially in the form attached hereto as Exhibit B (collectively, the "Bill of Sale"), together with any reasonably necessary transfer declarations or other filings, and such other instruments of transfer, conveyance and assignment as Buyer shall reasonably request to vest in Buyer good and valid title to the Purchased Assets free and clear of all liabilities other than assumed liabilities, in form and substance as Buyer shall reasonably request, including assignments regarding all intellectual property rights of the Seller (including the execution and delivery at the Closing by the Seller of a general assignment of all trademarks to Buyer or an affiliate of Buyer as may be specified by Buyer). Pursuant to this Agreement, the Seller will not sell, and Buyer will not purchase, any of the Excluded Assets. Following the consummation of the Sale, Buyer shall be responsible for any and all costs or fees, including but not limited to the conveyance, transportation costs and storage fees, associated with the delivery or pickup of any of the Purchased Assets. Buyer acknowledges and agrees that (i) Buyer is responsible for coordinating and performing the removal of the tangible Assets from various locations (including warehouse(s) and leased office space(s), and (ii) the owners of those locations will likely require the Seller have (and provide proof of) insurance in order to remove the tangible Assets. Furthermore, Buyer shall name Flex Ltd. as an additional insured on insurance obtained by Buyer relating to the removal of the tangible Assets from any location(s) in which the tangible Assets are items produced by Flex.

Section 1.06   As-Is Condition; No Further Due Diligence. Buyer acknowledges that it has performed sufficient and adequate due diligence to enter into this Agreement with sufficient information, and Buyer expressly: (i) waives all further due diligence; and (ii) agrees to take the Assets in an "as-is, where-is" condition.

Section 1.07   Seller Representations and Warranties. Seller represents and warrants to the Buyer that it holds legal title to the Assets, to the maximum extent possible pursuant to 11 U.S.C. § 541(a). Seller makes no further representations or warranties to Buyer whatsoever, express or implied, regarding the Assets, including but not limited to the condition, value, usability, extent, or nature of the Assets.

Section 1.08   Buyer Representations and Warranties. Buyer represents and warrants to the Seller that to the extent the Participating Lenders are not paid in cash, an equity participation agreement exists between each of the Participating Lienholders and Buyer, and that the lien releases tendered to the Trustee by the Participating Lienholders, as contemplated herein, are valid and binding lien releases.

Section 1.09   TITLE DISPUTES.   BUYER ACKNOWLEDGES THAT IT IS ACQUIRING THE ASSETS WITH THE FOLLOWING DISPUTES OR POTENTIAL DISPUTES:

- TITLE TO CERTAIN ASSETS PURCHASED HEREUNDER MAY BE DISPUTED. BUYER AGREES THAT IT MAY DEFEND (INCLUDING INCURRING THE COST TO DEFEND IN THE NAME OF THE TRUSTEE OF THE BANKRUPTCY ESTATE) ANY TITLE DISPUTES TO ASSETS THAT MAY CURRENTLY EXIST OR THAT MAY ARISE AFTER THE CLOSING OF THE SALE. BUYER AGREES THAT THE TRUSTEE HAS NO OBLIGATIONS TO DEFEND ANY SUCH ACTION.

- CERTAIN REIS & IRVY'S FRANCHISEES MAY HOLD CLAIMS TO THE FUNDS IN THE FRANCHISEE REVENUE BANK ACCOUNTS ACQUIRED BY BUYER AS PART OF ASSETS.  BUYER SHALL BE RESPONSIBLE FOR, AND SHALL BEAR ALL COSTS FOR, DETERMINING WHICH FUNDS BELONG TO WHICH FRANCHISEE, IF ANY, AND DISTRIBUTING THE SAME.

## ARTICLE II.   GENERAL PROVISIONS

Section 2.01   Limitation of Liability.  Except as stated herein, no Party will be liable to any other Party for losses or damages (including special or consequential damages such as lost profits or loss of use) arising from any cause of action related to this Agreement, whether in contract, tort, or otherwise, including, without limitation, with respect to the resolution of any title disputes as set forth in Section 1.08.

Section 2.02   Assignment and Succession.  This Agreement is binding on and enforceable by each Party's successors and assignees.

Section 2.03   Governing Law.  Any disputes between the Parties relating to or arising from this Agreement, of any kind or nature, shall be determined in the Bankruptcy Court, District of Nevada, and the parties do consent to personal jurisdiction of such court.  The laws of the State of Nevada shall control this Agreement.

Section 2.04   Further Assurances.  The Parties shall execute all such documents and take all such actions as may be necessary and reasonable to effect the consummation of this Agreement and the transactions contemplated by this Agreement. Each Party agrees to take no action to hinder, delay, or frustrate the consummation of this Agreement and the transactions contemplated by this Agreement.

Section 2.05   No Third-Party Beneficiaries.  This Agreement is for the sole benefit of the Parties and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable benefit, claim, cause of action, remedy or right of any kind.

Section 2.06   Severability.  If any court determines that any provision of this agreement is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this agreement invalid or unenforceable.

3/6/2020

Section 2.07    Full Integration. The Parties actively negotiated the terms of this Agreement.  This Agreement sets forth the entire agreement of the Parties as to the Assets and the Sale.  It replaces and supersedes any and all oral agreements or statements made between the Parties relating to the Assets and the Sale, as well as any prior writings.  There are no side agreements or other agreements or contracts, oral or otherwise, between the Parties relating to the Assets or the Sale, other than the equity participation agreement between the Participating Lienholders and Buyer.  Buyer has relied solely on its own investigation and not on any oral or written information provided by Seller or its agents.  Other than the equity participation agreement between the Participating Lienholders and Buyer, no Party has relied upon any statements other than those specifically contained in this Agreement.  Any breach in any equity participation agreement that may exist between the Participating Lienholders and Buyer shall be a dispute solely between those parties, and not the Seller.

Section 2.08    Authority. The signatory below for each Party has the authority to bind that Party.  All Parties have had the full opportunity to have their own legal counsel review the terms and conditions of this Agreement.

Section 2.09    Modification. This Agreement may be modified only by a writing signed by all Parties, or, alternatively, by agreement between the Parties to incorporate certain modifications within any order approving this Agreement.  After Bankruptcy Court approval of this Agreement, if cannot be modified without Bankruptcy Court approval of such modification.

Section 2.10    Counterparts. This Agreement may be executed in a number of counterparts, each of which shall be deemed an original and all of which together shall constitute the same document. Delivery by facsimile or email of an executed counterpart shall have the same force and effect as a delivery in person of that document.

* * * * *

IN WITNESS WHEREOF, the Parties have executed this Agreement by and through their authorized representatives.

[Signature Page Follows]

**SELLER:**    **BANKRUPTCY ESTATE OF GENERATION NEXT FRANCHISE BRANDS, INC.,**
Nevada chapter 7 bankruptcy case no. 19-17921-mkn

By: _____     3-6-2020
    Brian D. Shapiro, *Trustee*                        Date

**BANKRUPTCY ESTATE OF REIS & IRVY'S INC.,** Nevada chapter 7 bankruptcy
case no. 19-17922-mkn

By: _____     3-6-2020
    Brian D. Shapiro, *Trustee*                        Date

**BANKRUPTCY ESTATE OF PRINT MATES, INC.,** Nevada chapter 7 bankruptcy
case no. 19-17923-mkn

By: _____     3-6-2020
    Brian D. Shapiro, *Trustee*                        Date

**BANKRUPTCY ESTATE OF 19 DEGREES, INC.,** Nevada chapter 7 bankruptcy
case no. 19-17924-mkn

By: _____     3-6-2020
    Brian D. Shapiro, *Trustee*                        Date

**BUYER:**    **GENEXT LOAN, LLC**

By: Authorized Signatory

_____     3/6/2020
Signature                                          Date

JOHN B. B. PORTER                      MANAGER
_____     _____
Printed Name                                    Title

Page 8 of 8

# EXHIBIT A to APA:

## PROPOSED ORDER APPROVING SALE

ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
376 E. Warm Springs Rd Suite 130
Las Vegas, NV 89119
Telephone: (702) 614-0600
Facsimile: (702) 614-0647
*Attorney for Brian D. Shapiro, Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 19-17921-mkn<br>Chapter 7 |
| GENERATION NEXT FRANCHISE<br>BRANDS, INC., | **ORDER GRANTING MOTION TO SELL** |
| Debtor. | Hearing Date:    March _____, 2020<br>Hearing Time:    _____ a.m./p.m. |
| | *Jointly Administered*: |
| ☒ Affects All Debtors<br>☐ Affects GENERATION NEXT<br>FRANCHISE BRANDS, INC.<br>☐ Affects REIS & IRVY'S INC.<br>☐ Affects PRINT MATES, INC.<br>☐ Affects 19 DEGREES, INC. | 19-17921-mkn GENERATION NEXT<br>FRANCHISE BRANDS, INC.<br>(Lead)<br>19-17922-mkn REIS & IRVY'S INC.<br>19-17923-mkn PRINT MATES, INC.<br>19-17924-mkn 19 DEGREES, INC. |

A motion filed by Chapter 7 trustee Brian D. Shapiro ("***Trustee***") entitled

_____ [DE #____] ("***Sale Motion***") came on for a

hearing before this Court on March _____, 2020 ("***Sale Hearing***").  Appearances were as noted in the record.

The Sale Motion sought approval of: (i) the sale ("***Sale***") of substantially all of the assets of the above-captioned debtors (collectively, "***Debtors***"), except for certain retained assets, as identified in and pursuant to the terms of, the Asset Purchase Agreement attached as Exhibit 1 to the Sale Motion ("***APA***"); and (ii) the approval of certain filed stipulations [DE #_____, #_____, and #_____] entered into between the Trustee and certain lienholders (collectively, the "***Stipulations***"), resolving liens and potential disputes, and providing consent of those lienholders to the proposed sale.

The Court noted that no prospective overbidders were present at the hearing, and that no opposition to the Sale Motion or the Stipulations had been filed.

At the hearing, the Court heard argument and representations from counsel, deliberated thereon, and then read its ruling into the record.  All findings of fact and conclusions of law orally stated by the Court at the hearing are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings via Fed. R. Bankr. P. 9014(c) and 7052.  In particular,

**THE COURT HEREBY FINDS AND DETERMINES THAT:** [1]

**I. Jurisdiction, Final Order and Statutory Predicates.**

A.    The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (0).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

3/6/2020

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.    Genext Loan, LLC ("**_Buyer_**") has acted in good faith pursuant to Section 363(m) of the Bankruptcy Code[2] in the transaction evidenced by the APA, and cause has been shown as to why this Order should not be subject to the automatic 14-day stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d).

**II.    Notice of the Motion**

D.    The Trustee has articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion regarding the sale, including, without limitation, approval of the APA.

E.    Notice of the Sale Motion and the Sale Hearing was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9014 and 9019. The Trustee has complied with all obligations to provide notice of the Sale Hearing required by the Bankruptcy Code and Bankruptcy Rules, and in accordance with the Court's prior order limiting notice in these cases [DE #195]. Notice of the Sale Motion and the Sale Hearing was sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, or the Sale is required.

**III.    Good Faith of the Purchaser**

F.    The Buyer is not an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

G.    The Buyer is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. The negotiation and execution of the APA was at arms' length

---

[2] 11 U.S.C. 101 *et seq.*



1  and in good faith without collusion or fraud.

2  **IV.    Highest or Best Offer**

3        H.    The Sale contemplated by the APA constitutes the highest or best offer for the

4  Assets and will provide a greater recovery for the Debtors' estates than would be provided by

5  any other available alternative.  The Trustee's determination that the APA constitutes the highest

6  or best offer for the Assets was a reasonable exercise of his business judgment.

7        I.    The APA represents a fair and reasonable offer to purchase the Assets under the

8  circumstances of these bankruptcy cases.

9        J.    Approval of the Sale Motion and the APA, and the consummation of the Sale

10  contemplated thereby, is in the best interests of each of the four bankruptcy estates, their

11  creditors, and other parties in interest.

12  **V.    No Fraudulent Transfer or Successor Liability**

13        K.    The consideration provided by the Buyer pursuant to the APA, including the credit

14  bid portion of the purchase price, is fair and adequate, and constitutes reasonably equivalent

15  value and fair consideration under the Bankruptcy Code and under the laws of the United States,

16  including for purposes of the Uniform Fraudulent Transfer Act and the Uniform Fraudulent

17  Conveyance Act.

18        L.    The APA and all documents related thereto were not entered into, or agreed to be

19  entered into, as applicable, for the purpose of hindering, delaying or defrauding the Debtors'

20  creditors.  The Buyer has not entered into any document or transaction with any fraudulent intent

21  or other improper purpose.

22        M.    The Buyer is not a mere continuation of or successor to the Debtors in any respect,

23  and there is no continuity of enterprise between the Debtors and the Buyer.  Upon the closing of

24  the Sale contemplated by the APA, the Buyer shall have agreed to the treatment of the potential

25  disputes identified in Section 1.09 of the APA (the "***Potential Disputes***").

26  **VI.    Validity of Transfer**

27        N.    Upon the granting of the Sale Motion, no further consents or approvals are

28  



3/6/2020

required for the Trustee and the Buyer to consummate the sale contemplated by the APA.

O.      The transfer of the Assets to the Buyer at closing is a legal, valid and effective transfer of such assets, and at closing will vest the Buyer with all right, title and interest of the Debtors to the Assets, free and clear of all Liens (defined below) and Claims (defined below), accruing, arising or relating to any time prior to the closing of the Sale, except for any Potential Disputes.

P.      The Assets being sold are assets that are (i) property of the Debtors' estates within the meaning of, and the fullest extent of, section 541(a) of the Bankruptcy Code; and (ii) as defined in Section 1.03 of the APA (excluding the Excluded Assets, as defined in that section).

**VII.      Section 363(f) Is Satisfied**

Q.      The Assets may be sold free and clear of all Liens and Claims (except for any Potential Disputes under the APA) because, in each case, either consent has been provided in satisfaction of 11 U.S.C. 363(f)(2), or one or more of the standards set forth in Section 363(f)(1), (3), (4), or (5) of the Bankruptcy Code has been satisfied.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**General Provisions**

1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved.

2.      Any filed objections to the Sale Motion that have not been withdrawn, waived or settled, or have not otherwise been resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

**Approval of the APA and Stipulations**

3.      The APA, and all of the terms and conditions thereof, is hereby approved is full.

4.      The Stipulations are approved in full.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the APA,

3/6/2020

(ii) close the Sale as contemplated in the APA and this Order, and (iii) execute and deliver,
perform under, consummate, implement and close fully the APA, together with all additional
instruments and documents that may be reasonably necessary or desirable to implement the APA
and the Sale, or as may be reasonably necessary or appropriate to the performance of the
obligations as contemplated by the APA.

6.      This Order shall be binding in all respects upon the Trustee, the Debtors, their
estates, all holders of equity interests in any Debtor, all holders of any claims, lien, or other
interests (whether known or unknown) against or in any Debtor, any holders of Liens, Claims or
other interests against or in all or any portion of the Assets, the Buyer and all successors and
assigns of the Buyer, the Assets and the Trustee. This Order and the APA shall inure to the
benefit of the Debtors, their estates, their creditors, the Buyer and each of their respective
successors and assigns.

**Transfer of the Assets**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy
Code, the Trustee is authorized to transfer the Assets at the closing of the Sale. Title to the Assets
shall be transferred to the Buyer at closing, and such transfer shall constitute a legal, valid,
binding and effective sale and transfer of the Assets and, upon the Trustee's receipt of the
Purchase Price, shall be free and clear of all charges, liens (statutory or otherwise), interests,
security interests, claims, mortgages, leases, subleases, hypothecations, deeds of trust, licenses,
pledges, options, rights of use or possession, rights of first offer or first refusal, easements,
servitudes, restrictive covenants, encroachments, encumbrances, rights of way, retentions of title,
conditional sale agreements, transfer restrictions or other similar restrictions of any kind,
including any restrictions on use, voting, transfer, receipt of income or exercise of any other
attribute of ownership, however arising or existing (collectively, "***Liens***") and claims, including,
without limitation, all "claims" within the meaning of sections 101(5), 102(2) and 105 of the
Bankruptcy Code, and all interests, encumbrances, rights of setoff, recoupment, netting and
deductions ("***Claims***"), including, but not limited to, Liens, Claims, or interests in respect of the

following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state labor laws; (k) state discrimination laws, (1) state unemployment compensation laws or any other similar state laws, or (m) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (6) any environmental law(s); and (7) any theories of successor liability, (excepting the Potential Disputes under the APA), in each case whether known or unknown and whether asserted or unasserted as of the closing date of the Sale. Upon the closing of the Sale, the Buyer shall take title to and possession of the Assets subject only to the Potential Disputes. Pursuant to section 363(c) of the Bankruptcy Code, other than with respect to the Potential Disputes, the transfer of title to the Assets shall be free and clear of (a) any and all Liens, (b) any and all Claims, and (c) any and all other liabilities and encumbrances including, without limitation, any and all claims pursuant to any successor or successor in interest liability theory; *provided, however,* that the Purchaser shall not be relieved of the Potential Disputes.

8.    Any lien for any heretofore unknown lienholder shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Assets, subject to any claims and defenses the Debtors and their estates may possess

with respect thereto.

9.     Buyer shall assume the Potential Disputes, as found in (and in accordance with the terms of) Section 1.09 of the APA.

10.     Except as expressly provided by the APA with respect to Potential Disputes, all persons and entities holding Liens, Claims or interests in all or any portion of the Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the closing of the Sale or the transfer of the Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their property or the Assets, such persons' or entities' Liens or Claims in and to the Assets.  At the closing of the Sale, each creditor, including each lienholder identified in the Sale Motion is authorized and directed to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to release Liens or Claims on the Assets, if any, as provided for herein, as such Liens or Claims may have been recorded or may otherwise exist.

11.     Notwithstanding anything to the contrary contained herein, to the fullest extent permitted by applicable law, neither the Buyer nor its affiliates, successors or assigns shall, as a result of the consummation of the transactions set forth in the APA: (i) be a successor to the Debtors or the Debtors' estates; (ii) have, de facto or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. Except for the Potential Disputes, the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law.

12.     For the avoidance of doubt, the Assets do not include any of the Excluded Assets, as that term is defined in Section 1.03 of the APA.

13.     All persons and entities that are in possession of any of the Assets are  ordered to surrender possession of such Assets to the Buyer.

14.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens or encumbrances of record or with any Secretary or State (or other appropriate UCC filing officer) to terminate any financing statement.

15.    If any person or entity that has filed a UCC-1 financing statement(s) (or executed any other document evidencing a lien on any portion of the Assets) and has not yet delivered to the Buyer or Trustee, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, or any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Liens and Claims against the Assets, the Buyer is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

16.    This Order shall be construed as, and shall constitute for any and all purposes, a full and complete sale, conveyance and transfer of the Debtors' interests in the Assets. This Order is, and shall be, sufficient evidence of the transfer of title of the Assets to the Buyer. In addition, the Trustee is authorized to, and shall, execute the Bill of Sale attached as Exhibit B to the APA, and upon such execution such Bill of Sale shall also be sufficient evidence of the transfer of title of the Assets to the Buyer.

17.    The Sale consummated pursuant to this Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept this Order as sufficient evidence of such transfer of title. Each and every federal, state and local governmental agency, department, authority or jurisdiction is hereby directed to accept any and all documents

and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including any modification or amendment to any public records or documents to acknowledge the Buyer as the new owner, operator, licensee or permittee of any applicable license, permit or similar asset.

18.     The provisions of this Order authorizing the sale of the Assets free and clear of all Liens and Claims, other than Potential Disputes, shall be self-executing, and neither the Trustee nor the Buyer shall be required to execute or file releases, termination statements, consents or other instruments to effectuate, consummate and implement the provisions of this Order; *provided, however,* that the Trustee and the Buyer are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Trustee or the Buyer deem necessary or appropriate to implement and effectuate the terms of the APA and this Order.

**Other Provisions**

19.     The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.

20.     Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for 14 days after the entry hereof, but shall be effective and enforceable immediately upon entry, and stay provided in such rules is hereby expressly waived and shall not apply. Time is of the essence in consummation of the Sale, and the Trustee and the Buyer are authorized and instructed to close the Sale as soon as practicable, but in no event later than March 20, 2020.

21.     Any appeal seeking to enjoin or stay consummation of the Sale shall be subject to the appellant depositing or posting a bond equal to the then aggregate purchase price, and applicable damages, pending the outcome of the appeal.

22.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

23.    The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety except as otherwise expressly provided by in this Order.

24.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

25.    To the extent that this Order is inconsistent with any prior Order, the APA, any other document or pleading with respect to the Sale Motion in these bankruptcy cases, the terms of this Order shall govern.

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

# # # # #

Respectfully submitted by:

   /s/ Robert E. Atkinson
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958
*Attorney for Brian D. Shapiro, Trustee*

1

## CERTIFICATION re: RULE 9021

2

3
In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

4
☐ The court has waived the requirements set forth in LR 9021(b)(1).

5
☐ No other party appeared at the hearing or filed an objection to the motion.

6

7
☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

8

9

10

11

12

13
☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

14

15
###

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B to APA:

# FORM OF BILL OF SALE

## BILL OF SALE

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, (i) the BANKRUPTCY ESTATE OF GENERATION NEXT FRANCHISE BRANDS, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17921-mkn, the BANKRUPTCY ESTATE OF REIS & IRVY'S INC., arising from Nevada chapter 7 bankruptcy case no. 19-17922-mkn, the BANKRUPTCY ESTATE OF PRINT MATES, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17923-mkn, and the BANKRUPTCY ESTATE OF 19 DEGREES, INC., arising from Nevada chapter 7 bankruptcy case no. 19-17924-mkn, all by and through chapter 7 trustee Brian D. Shapiro (collectively, jointly and severally, the "**Seller**"), in connection with the sale of certain property pursuant to the Purchase Agreement (as defined below), hereby grants, assigns, transfers, conveys and delivers to **GENEXT LOAN, LLC**, a Wyoming limited liability company ("**Purchaser**"), all of Seller's right, title and interest in and to each and every Asset[1] as defined in that certain Asset Purchase Agreement, dated as of March ___, 2020, entered into by and between Seller and Purchaser, as amended from time to time (as amended, the "**Purchase Agreement**"), including, without limitation, (i) all properties, assets, goodwill, rights and claims of each Seller, of whatever kind and nature, real or personal, tangible or intangible (other than Excluded Assets), (ii) all contract rights, any permits, consents, licenses and approvals from any third party, (iii) all intellectual property, assets, rights and claims of the Seller, including, without limitation, trademarks, service marks, patents, copyrights, trade secret and confidential information ; (iv) all causes of action, claims, litigation, counterclaims, defenses or rights related to the Purchased Assets of Seller, except for the Retained Litigation Claims; (v) all contents of any bank account held in the name of Reis & Irvy's and Print Mates into which franchisee credit card sales are deposited; and (vi) subject to an irrevocable license granted to Seller, all books and records related to the above, including, without limitation, all computers and hard drives on which such books and records may exist and any manuals for the operation of the machines, free of all encumbrances to the extent provided for under the final Bankruptcy Court Order approving the Purchase Agreement and the transactions contemplated therein (the "Sale Order"). To the extent of any conflict between this Bill of Sale and the Purchase Agreement, the Purchase Agreement shall govern.

The foregoing conveyance is made and accepted subject to all representations, warranties, covenants and other provisions of the Purchase Agreement. This Bill of Sale shall be governed by the laws of the State of Nevada.

*[Signatures follow on next page]*

---

[1] Defined terms used herein have the meanings ascribed to them in the Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale as of March __, 2020.

**SELLER:**    **BANKRUPTCY ESTATE OF GENERATION NEXT FRANCHISE BRANDS, INC.,** Nevada chapter 7 bankruptcy case no. 19-17921-mkn

By:    _____    _____
        Brian D. Shapiro, *Trustee*    Date

**BANKRUPTCY ESTATE OF REIS & IRVY'S INC.,** Nevada chapter 7 bankruptcy case no. 19-17922-mkn

By:    _____    _____
        Brian D. Shapiro, *Trustee*    Date

**BANKRUPTCY ESTATE OF PRINT MATES, INC.,** Nevada chapter 7 bankruptcy case no. 19-17923-mkn

By:    _____    _____
        Brian D. Shapiro, *Trustee*    Date

**BANKRUPTCY ESTATE OF 19 DEGREES, INC.,** Nevada chapter 7 bankruptcy case no. 19-17924-mkn

By:    _____    _____
        Brian D. Shapiro, *Trustee*    Date

Exhibit B
BS
P22
3-6-2020

3/6/2020